## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **JACQUELINE DELGADO**, individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**EMORTGAGE FUNDING, LLC**, a Michigan company,<br><br>Defendant. | No. 2:21-CV-11401-BAF-EAS<br><br>Hon. Bernard A. Friedman<br>Mag. Judge Elizabeth A. Stafford<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

## FIRST AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Jacqueline Delgado ("Plaintiff" or "Plaintiff Delgado") brings this Class Action Complaint and Demand for Jury Trial against Defendant eMortgage Funding, LLC ("eMortgage Funding"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited calls to consumers who registered their phone numbers on the Do Not call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Delgado is a Las Vegas, Nevada resident.

2. Defendant eMortgage Funding is in Michigan and headquartered in Troy, Michigan. eMortgage Funding conducts business throughout this District, Michigan, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides here and the wrongful conduct leading to this case was directed by Defendant to the Plaintiff from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

2

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in May 2021 alone, at a rate of 128.7 million per day. www.robocallindex.com. (Last checked June 6, 2021)

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION TO EMORTGAGE FUNDING

16. eMortgage Funding is a mortgage broker that operates in 14 states, including Nevada, that provides loans to consumers.[3]

17. eMortgage Funding makes telemarketing calls to consumers in order to solicit its mortgage funding solutions.

18. Defendant makes telemarketing calls to residential telephone consumers whose numbers are registered on the Do Not Call registry, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

19. For example, Plaintiff Delgado received multiple calls from or on behalf of eMortgage Funding even when she never gave her phone number to the Defendant, despite having her landline residential phone number registered on the DNC to prevent such cold calls and despite making clear requests to the caller for the calls to stop.

20. Consumers have posted complaints online directly to eMortgage Funding regarding unsolicited telemarketing calls that they received that match what Plaintiff experienced including:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/emtgfunding/about/

- 

- "terrible company who keeps calling me 5 times a day after I ask every time to stop."[5]

- "I have asked this company numerous times (6+) to STOP calling me, but they wont. I talked at length to the first rep then respectfully declined after thinking it over. But yet now every few days a different person from the same company calls and will not take no for an answer…"[6]

- "Got called and emailed almost daily from David and Victora with this company…"[7]

21. In addition, consumers have complained about calls they received from 248-285- 9673, the same phone number Plaintiff was called from, including:

- "I have talked to a couple operators. They say they are about mortgage. I asked to be removed from the call list. Now they call nearly every hour. They just listen, no one speaks, I finally hang up!"[8]

- "may 4th 21 calls started at 4:01 pm then 4:04,4:32, 4:57, 5:13.then today 5-5-21 9:02am 9:10, 9:27. Can`t somebody shut this crap down ?."[9]

- "Had about fifteen calls from this number on April 19, 2021: 'Hello, I'd like to talk to you about your mortgage.' (I'm not a homeowner; I

---

[4] https://www.google.com/search?q=%22emortgage+funding
[5] *Id.*
[6] https://rms.digitalgator.com/emortgage-funding-llc-154888670827254?filter=LowestRating
[7] *Id.*
[8] https://www.reportedcalls.com/2482859673
[9] *Id.*

5

don't have a mortgage.) When you tell them in no uncertain terms not to call back, they ignore you and call back in an hour."

- "calling back the number it says it does not exist."[10]
- "Call a lot during the day, boiler room I believe but noise and no answer?"[11]
- "MULTIPLE calls a day!"[12]
- "They have called relentlessly for several days, despite me stating that I am not the person they are calling."[13]
- "calling multiple times daily. Caller ID only says Pontiac MI. Our number is on the national do not call registry."[14]
- "248-285-9673 continues to call and hang up got josh on the phone and asked to remove my number he said ok but the calls continue received 10 calls today I believe this is about refinancing my home"[15]

22. Although the calls to Plaintiff appear to have been made by eMortgage Funding's own employees, and Plaintiff asserts that eMortgage Funding is directly liable for those calls, if it is revealed in discovery that eMortgage Funding is soliciting the services of a third-party call center to make cold calls to generate leads on its behalf, it is believed that eMortgage Funding pays for each lead that it receives through a live call transfer, or through a similar circumstance.

23. Based on the foregoing, eMortgage Funding authorizes a third-party call center with respect to the telemarketing phone calls to consumers as described above. In addition and/or in the alternative, eMortgage Funding ratified the third-party call center's making of the telemarketing calls described above.

---

[10] *Id.*
[11] *Id.*
[12] https://www.callercenter.com/248-285-9673.html
[13] *Id.*
[14] *Id.*
[15] https://800notes.com/Phone.aspx/1-248-285-9673

6

24. Indeed, eMortgage Funding knows that telemarketing calls are being placed on its behalf to generate leads for mortgage loans, without prior express written consent.

25. The Federal Communication Commission has instructed that companies such as eMortgage Funding may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

26. If Plaintiff and the members of the proposed Classes did in fact receive telemarketing calls from a third-party call center on behalf of Defendant eMortgage

7

Funding, eMortgage Funding is liable for the willful TCPA violations of its chosen telemarketing agent.

27. In response to these unsolicited calls, Plaintiff Delgado files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF DELGADO'S ALLEGATIONS

28. Plaintiff Delgado registered her residential, landline phone number on the DNC on June 1, 2006.

29. Plaintiff Delgado uses her residential phone number for personal use only.

30. On May 4, 2021 at 2:11 PM, Plaintiff Delgado received an unsolicited call from or on behalf of the Defendant to her residential phone number from 248-285-9673.

31. Plaintiff answered this call but there was only silence before the line disconnected.

32. Plaintiff then received a 2nd unsolicited call from or on behalf of the Defendant to her residential phone number, again from 248-285-9673 on May 4, 2021 at 2:43 PM. Plaintiff did not answer this call.

33. Plaintiff then received a 3rd unsolicited call from or on behalf of the Defendant on May 4, 2021 at 3:26 PM from 248-285-9673. Plaintiff answered this call but there was only silence before the line disconnected.

8

34. On May 5, 2021 at 8:09 AM, Plaintiff received a 4th unsolicited call from, or on behalf of the Defendant to her residential phone number, from 248-285-9673. Plaintiff did not answer this call.

35. Plaintiff received additional calls from, or on behalf of the Defendant, all of which were from 248-285-9673 including calls on:

- May 5, 2021 at 8:34 AM, 11:09 AM and 2:51 PM
- May 6, 2021 at 11:43 AM
- May 7, 2021 at 1:29 PM

36. All of the above calls were answered, but there was only silence before the line was disconnected.

37. On May 10, 2021 at 8:56 AM, Plaintiff received another unsolicited call from the phone number 248-285-9673. Plaintiff answered this call and spoke with a live employee who wanted to speak to Plaintiff about her mortgage to promote mortgage services. Plaintiff complained about the unwanted calls she was receiving and specifically stated that she did not want to be called again.

38. Despite Plaintiff's request to the Defendant's agent to stop calling, Plaintiff continued to receive additional unsolicited calls from the same phone number, 248-285-9673, on May 10, 2021 at 11:50 AM, 1:20 PM and 3:09 PM.

39. On May 11, 2021 at 11:34 AM, Plaintiff received another unsolicited call from 248-285-9673. Plaintiff immediately told the employee to stop calling her, as she was very frustrated by the unsolicited calls she was receiving.

40. Despite her second request to stop calling her, Plaintiff received the following unsolicited calls from, or on behalf of Defendant from the same phone number 248-285-9673 on:

- May 11, 2021 at 1:20 PM, 2:23 PM and 3:09 PM;
- May 12, 2021 at 8:06 AM, 9:03 AM, 12:16 PM and 3:41 PM;

41. All of the above calls were answered, but there was only silence before the line was disconnected.

42. On May 13, 2021 at 11:41 AM, Plaintiff received another unsolicited call from the phone number 248-285-9673. Plaintiff was frustrated by all the unsolicited calls she was receiving, and wanted to find out who the caller exactly was. So Plaintiff Delgado pretended that she was interested in the mortgage services being promoted when a live employee came on the line. After Plaintiff expressed interest in the products the caller was promoting, the caller transferred the Plaintiff to speak with another person for the details regarding refinancing.

43. This person informed that Plaintiff that they worked for eMortgage Funding, and that their office was located at 888 W. Big Beaver Rd., Suite 1290, Troy, Michigan. The employee provided 248-247-3411 as the number the Plaintiff could call them back at. This number belongs to Defendant eMortgage Funding.[16]

44. Despite making multiple requests to the Defendant's employees to stop calling her, Plaintiff Delgado received additional unsolicited calls from or on behalf of Defendant from the same phone number 248-285-9673 on May 14, 2021 at 8:17

---

[16] https://www.whitepages.com/phone/1-248-247-3411

10

AM and 11:03 AM. Both of these calls were answered by the Plaintiff, and both automatically disconnected after 11 seconds of silence.

45. Plaintiff Delgado never consented to receiving solicitation calls from Defendant eMortgage Funding.

46. In addition, Plaintiff specifically instructed Defendant or its agents to stop calling at her number, but Defendant or its agents continued to place unsolicited calls to her residential phone number.

47. The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Delgado in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

48. Seeking redress for these injuries, Plaintiff Delgado, on behalf of herself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

49. Plaintiff Delgado brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's non-business telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the Defendant or its agent claims they obtained the person's number in the same manner as Defendant or its agent obtained Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant or its agent called more than one time on the person's non-business telephone number (2) within any 12-month period (3) for substantially the same reason Defendant or its agent called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

50. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Delgado anticipates the need to amend the Class definitions following appropriate discovery.

51. **Typicality and Numerosity**: Plaintiff is a member of the Classes, and on information and belief, there are hundreds, if not thousands of members of the

Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

52. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether the Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days at the time of each call;

(c) whether the Defendant or an agent calling on behalf of Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

53. **Adequate Representation**: Plaintiff Delgado will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Delgado has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to

Plaintiff. Plaintiff Delgado and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Delgado nor her counsel have any interest adverse to the Classes.

54. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Delgado. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Delgado and the Do Not Registry Class)**

55. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

56. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

58. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Delgado and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

59. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Delgado

and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

60. As a result of Defendant's conduct as alleged herein, Plaintiff Delgado and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for each of such violations of 47 C.F.R. § 64.1200.

61. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Delgado and the Internal Do Not Call Class)**

62. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

63. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

>  (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

64. Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

65. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

66. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Delgado, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiff Delgado as the representative of the Classes; and appointing her attorneys as Class Counsel;

18

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Delgado requests a jury trial.

Respectfully Submitted,

**JACQUELINE DELGADO**, individually and on behalf of those similarly situated individuals

Dated: August 20, 2021

*/s/ Avi R. Kaufman*
Avi R. Kaufman
KAUFMAN P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
law@stefancoleman.com

*Attorneys for Plaintiff and the putative Classes*