UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE DELGADO,

      Plaintiff,                          Civil Action No. 21-CV-11401

vs.                                  HON. BERNARD A. FRIEDMAN

EMORTGAGE FUNDING, LLC,

      Defendant.

_____/

**<u>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR
STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S AMENDED COMPLAINT</u>**

        This matter is presently before the Court on defendant's motion to dismiss and/or strike certain allegations from plaintiff's amended complaint ("Am. Compl.") (ECF No. 10). Plaintiff has responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall deny the motion.

        This is a Telephone Consumer Protection Act ("TCPA") case. Plaintiff filed the complaint on behalf of herself and two proposed classes of similarly situated consumers. Plaintiff is a resident of Las Vegas, Nevada, and defendant, eMortgage Funding, LLC ("eMortgage"), is a mortgage broker headquartered in Troy, Michigan, with operations in fourteen states including Nevada. *See* Am. Compl. ¶ 16.

        Plaintiff states that she registered her landline on the National Do Not Call ("DNC") Registry on June 1, 2006. *See id*. ¶ 28. She alleges that she received "multiple calls from or on behalf of eMortgage Funding even when she never gave her phone number to the Defendant, despite having her landline residential phone number registered on the DNC to prevent such cold calls and despite making clear requests to the caller for the calls to stop." *Id*. ¶ 19. Plaintiff states

that between May 4 and May 14, 2021, she received twenty-four unsolicited calls on her residential landline from the same number, 248-285-9673.  *See id.* ¶¶ 30-44.

Although plaintiff did not answer many of the calls and many others disconnected following a short period of silence, plaintiff states that on one occasion, after feigning interest in "the mortgage services being promoted," she spoke with the caller.  *Id.* ¶ 42.  The caller then transferred plaintiff to a second individual who allegedly indicated that he or she worked for defendant.  *See id.* ¶¶ 42-43.  Plaintiff states that "[t]his person informed . . . Plaintiff that they worked for eMortgage Funding, and that their office was located at 888 W. Big Beaver Rd., Suite 1290, Troy, Michigan. The employee provided 248-247-3411 as the number the Plaintiff could call them back at," which, plaintiff asserts, "belongs to Defendant eMortgage Funding." *Id.* ¶ 43.  Plaintiff adds that after answering a call on May 10, she "spoke with a live employee who wanted to speak to Plaintiff about her mortgage to promote mortgage services." *Id.* ¶ 37.  On both May 10 and May 11, plaintiff states that she informed the caller that she did not want to be called again but that she nonetheless continued to receive calls through May 14.  *See id.* ¶¶ 37, 39.

Plaintiff states that she is not alone in this experience, but that other "[c]onsumers have posted complaints online directly to eMortgage Funding regarding unsolicited telemarketing calls that they received," despite their status as DNC registrants. *Id.* ¶¶ 20-21.  Plaintiff states that either eMortgage's own employees or an authorized and compensated third party is making these unsolicited calls in violation of the TCPA.  *See id.* ¶¶ 22-27.

The amended complaint seeks to certify the following classes:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's non-business telephone number had been listed on the

2

National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the Defendant or its agent claims they obtained the person's number in the same manner as Defendant or its agent obtained Plaintiff's number.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant or its agent called more than one time on the person's non-business telephone number (2) within any 12-month period (3) for substantially the same reason Defendant or its agent called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

*Id*. ¶ 49.  Plaintiff asserts two claims under the TCPA, one on behalf of herself and the Do Not Call Registry Class, asserting a violation of 47 C.F.R. § 64.1200(c) ("DNC registry claim") and another on behalf of herself and the Internal Do Not Call Class, asserting a violation of § 64.1200(d) ("internal DNC claim").  Plaintiff seeks actual and/or statutory damages and costs, as well as declaratory and injunctive relief.

In the instant motion, defendant asks the Court to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Alternatively, defendant asks the Court to strike from the amended complaint plaintiff's class allegations and references to historical online consumer complaints, pursuant to Rules 23 and 12(f), respectively.

---

[1] Defendant also seeks dismissal for lack of Article III standing.  However, defendant's standing argument rests on the same grounds as the Rule 12(b)(6) argument.  Specifically, defendant contends that because plaintiff has failed to sufficiently allege either direct or vicarious liability under the TCPA, she has also failed to allege causation and redressability, two of the three requirements to establish Article III standing.  *See* Def.'s Br. at 6.  Because these two lines of argument rise and fall together, the Court will only address the Rule 12(b)(6) arguments below.

3

**I. Defendant's Motion to Dismiss**

Defendant contends that the amended complaint "conclusorily and inconsistently alleges, without requisite supporting facts, that eMortgage violated the TCPA's DNC provisions." Def.'s Br. at 1. Defendant argues that plaintiff has failed to adequately allege facts that support either direct or vicarious liability under the TCPA. As to direct liability, defendant states that "the TCPA applies <u>only</u> to persons or entities that 'initiate' telemarketing calls and . . . to 'initiate' in this context means to 'physically place' a call." *Id*. at 7 (emphasis in original). Defendant argues that "[m]erely alleging that [a defendant] made or initiated [a] call is not sufficient to allege a [direct] TCPA [liability] claim." *Id*. at 8 (internal quotation marks omitted).

As to vicarious liability, defendant contends that "in the TCPA context, courts have widely recognized [that] vicarious liability cannot attach without the 'essential ingredient' of control." *Id*. at 12. Defendant argues that in the present case, "Plaintiff does not–and indeed cannot–allege the 'essential ingredient' of control," but rather relies on "vague references to 'agents' and other unidentified third parties." *Id*. at 13.

Defendant further argues that plaintiff has failed to plead facts supporting essential elements of both her DNC registry claim (Count I) and her internal DNC claim (Count II). First, as to both Counts I and II, defendant states that

> a violation of § 227(c) of the TCPA requires a "telephone solicitation"—which is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission."

*Id*. (quoting 47 C.F.R. § 64.1200(f)(15)). Defendant argues that plaintiff "provides virtually no detail about the content of the calls—most of which she did not answer or speak to anyone—supporting such an inference." *Id*. at 15. Second, as to Count II, defendant states that

4

"a violation of the internal DNC provisions <u>only</u> stems from 'the initiation of the phone call without having [first] implemented the minimum procedures' and <u>not</u> for any other reason." *Id.* (emphasis in original). Defendant contends that "[h]ere, Plaintiff merely offers **one** conclusory allegation regarding eMortgage's supposed failure to 'implement[] internal [DNC] procedures' without factual support." *Id.* (emphasis in original). Third, also as to Count II, defendant notes that "there is a 30-day window to honor a request to be placed on an internal DNC list," and that courts "have held that a telemarketer must implement a procedure to honor a do-not-call request in a *reasonable time, not immediately*." *Id.* at 16 (emphasis in original, internal quotation marks omitted). Defendant argues that

> [h]ere, Plaintiff at best alleges the at-issue calls occurred over a span of ***ten days***, which is well within the 30-day window afforded under the TCPA, and alleges that the first time she even spoke to anyone was on May 10th, which was just ***four days*** before the last alleged call.

*Id.* (emphasis in original). Therefore, defendant contends, plaintiff has failed to plead claims upon which relief can be granted.

In response, plaintiff contends that she has sufficiently alleged claims under the TCPA's DNC registry and internal DNC provisions. In particular, plaintiff notes that she has alleged that (1) on at least two occasions she received telemarketing calls during which the caller solicited mortgage services; (2) on at least one of those occasions she spoke with someone who identified him- or herself as a representative of defendant; (3) her experience mirrored that of other consumers who received unsolicited calls from defendant; and (4) she continued to receive calls despite twice requesting that the calls cease. *See* Pl.'s Resp. Br. at 9-14. Plaintiff argues that based on these allegations, "it is plausible, if not necessary, to infer that eMortgage itself called Plaintiff, and that as a result, Plaintiff's injury from the calls is traceable to eMortgage." *Id.* at 9.

5

She adds that any question regarding the reasonableness of defendant's delay in implementing its internal do not call procedures is best left to the jury.  *See id.* at 14.

## II. Analysis under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id.* at 678-79 (internal quotation marks and citations omitted).  For the following reasons, the Court concludes that, accepting as true all of the allegations contained therein, plaintiff's amended complaint meets the *Iqbal* standard and defendant's motion to dismiss must therefore be denied.

Under 47 U.S.C. § 227(c)(1), the TCPA authorized the Federal Communications Commission ("FCC") to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  In relevant part, the FCC's regulations state:

> No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. [("DNC registry provision")].

✻   ✻   ✻

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. [("internal DNC provision")].

§ 64.1200(c)(2), (d).  Pursuant to § 227(c)(5), "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection [of the TCPA]" may bring a claim in state or federal court.[2]

The FCC regulations that govern the TCPA also include certain safe harbor provisions that allow a defendant to avoid liability under § 227(c).  A defendant may not be held liable for an alleged violation of the DNC registry provision if "[i]t can demonstrate that the violation is the result of error and that as part of its routine business practice" it maintains certain procedures, including but not limited to (1) having a written policy to "comply with national do-not-call rules"; (2) training personnel in "procedures established pursuant to the national do-not-call rules"; (3) maintaining "a list of telephone numbers that the seller may not contact";

---

[2] Although the TCPA states that "a private person may seek redress for violations of the Act (or of the . . . regulations thereunder) 'in an appropriate court of [a] State," the Supreme Court has held that "federal and state courts have concurrent jurisdiction over private suits arising under the TCPA." *Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 371-72 (2012).

and (4) regularly "[a]ccessing the national do-not-call database."    Section 64.1200(c)(2). Similarly, a defendant can avoid liability for an alleged violation of the internal DNC provision if it meets certain minimum standards, including but not limited to (1) having a "written policy, available upon demand, for maintaining a do-not-call list"; (2) training personnel "in the existence and use of the do-not-call list"; (3) recording requests not to receive calls and honoring those requests "within a reasonable time from the date such request is made," which "may not exceed thirty days"; (4) providing the name of the "person or entity on whose behalf the call is being made"; and (5) honoring requests not to be called "for 5 years from the time the request [was] made."  Section 64.1200(d).

In the present case, plaintiff has sufficiently alleged that, on more than one occasion during a twelve-month period, defendant or its agent(s) initiated telephone solicitations to her residential telephone, despite having registered this number on the DNC registry and despite having asked defendant to stop calling.  She has also plausibly alleged that defendant has failed to institute adequate procedures to comply with the requests of persons who do not want to receive telemarketing calls, given the calls' persistence days after plaintiff asked that they cease. Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable.  Here, plaintiff allegedly received fourteen additional calls over the four-day period immediately following her request that the calls stop.  The Court cannot determine the reasonableness of this delay on the pleadings alone. The Court concludes that plaintiff's amended complaint states a plausible claim for relief under both the TCPA's DNC registry and internal DNC provisions and will therefore deny defendant's motion to dismiss.

**III. Defendant's Motion to Strike**

The Court shall also deny defendant's motion to strike plaintiff's class allegations and references to historical online consumer complaints.  As to the former, defendant's request is premature.  The Supreme Court has "[r]epeatedly . . . emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted).  "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim.  That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 33-34 (internal quotation marks and citation omitted).   The Sixth Circuit has added that "[c]lass certification is appropriate if the court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013).

While both of plaintiff's proposed classes must meet Rule 23's various requirements in order to be certified, the parties have yet to reach this stage in the litigation.  At present, the Court lacks the information necessary to conduct a rigorous analysis under Rule 23. Moreover, based on the facts alleged in plaintiff's amended complaint, it is possible that she will be able to meet Rule 23's class certification requirements.  The Court will therefore defer ruling on the viability of plaintiff's proposed classes until a motion to certify the class is briefed.

Finally, the Court shall deny defendant's request to strike plaintiff's references to historical online consumer complaints.  Rule 12(f) states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike a pleading have long been held in disfavor, as being drastic remedies not to be

9

used unless the material to be stricken has 'no possible relation to the controversy.'" *Prentice v. Residential Funding LLC*, No. 12-12993, 2013 WL 1663868, at *2 (E.D. Mich. Apr. 17, 2013) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

In the amended complaint, plaintiff references various online posts in which consumers complain that they have received numerous unsolicited calls from defendant and/or from the same number that allegedly called plaintiff.  *See* Am. Compl. ¶¶ 20-21.  Some of the complainants also state that the caller offered them mortgage products or services.  *See id.*  The Court does not find these historical allegations to be redundant, immaterial, impertinent, or scandalous.  Rather, they add to the plausibility of plaintiff's allegations, address defendant's compliance (or lack thereof) with the TCPA's safe harbor provisions, and speak to whether defendant knowingly or willfully violated the TCPA.  *See* § 227(c)(5)(C) (allowing for treble damages "[i]f the court finds that defendant willfully or knowingly violated the regulations prescribed under this subsection").  For these reasons, the Court shall deny defendant's motion to strike plaintiff's class allegations and references to prior online consumer complaints.

## IV. Conclusion

Accordingly,

IT IS ORDERED that defendant's motion to dismiss and/or strike certain allegations from plaintiff's amended complaint is denied.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  October 13, 2021                    SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan

10